# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### WAYCROSS DIVISION

JOSEPH TABB,

        Plaintiff,

    v.

HOMER BRYSON, Commissioner Georgia
Department of Corrections; TOM GRAMIAK,
Warden, Ware State Prison; EDWINA
JOHNSON, Ware State Prison Deputy Warden
of Care and Treatment; JUANDA
CRAWFORD, Ware State Prison Deputy
Warden of Administration;  NATHAN
BROOKS, Ware State Prison Tier II Program
Unit Manager; WILLIAM STEEDLEY, Ware
State Prison Officer in Charge of Tier II
Program; KIMBERLY LOWE, Ware State
Prison Correctional Counselor; JANE DOE,
Ware State Prison Food Services Director;
MR. FERREL, Medical Director at Ware State
Prison; JANE DOE-2, Physician's Assistant at
Ware State Prison,

        Defendants.

CIVIL ACTION NO.: 5:15-cv-58

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently housed at Ware State Prison in Waycross, Georgia, submitted a Complaint in the above captioned action pursuant to 42 U.S.C. § 1983.  (Doc. 1.)  For the numerous reasons set forth below, the Court should **DISMISS** the following claims:

- All monetary damages claims against Defendants in their official capacities;

- All monetary damages claims against Defendant Homer Bryson;

- Eighth Amendment denial of exercise claims against Defendants Crawford, Lowe, Doe, Ferrel, and Doe-2;

- Eighth Amendment inadequate food claims against Defendants Brooks, Steedley, Lowe, Ferrel, and Jane Doe-2;

- Eighth Amendment inadequate medical care claims against Defendants Brooks, Steedley, Lowe, and Jane Doe; and

- Procedural and Substantive Due Process Claims against Defendants Johnson, Crawford, Jane Doe, Ferrel, and Jane Doe-2.

Additionally, I **RECOMMEND** that the Court **DENY** Plaintiff's Motion for a Preliminary Injunction. (Doc. 4.) However, as detailed below, Plaintiff sets forth at least one viable claim against all Defendants. Accordingly, the Court **DIRECTS** the United States Marshal to serve all Defendants with a copy of Plaintiff's Complaint, (doc. 1), Plaintiff's Amended Complaint, (doc. 20), and this Order.

Additionally, the Court **GRANTS** Plaintiff's Motion to Amend his Complaint. (Doc. 20, p. 1). However, Plaintiff need not file an amendment because the Court hereby deems his Complaint amended by the Amended Complaint and Exhibits, (doc. 20, pp. 2-21), already filed with the Court. Further, the Clerk of Court is hereby **DIRECTED** to add the following Defendants, named in Plaintiff's Amended Complaint, to the docket of this case: Edwina Johnson, Ware State Prison Deputy Warden of Care and Treatment; Juanda Crawford, Ware State Prison Deputy Warden of Administration; Jane Doe, Ware State Prison Food Services Director; Mr. Ferrel, Medical Director at Ware State Prison; and Jane Doe-2, Physician's Assistant at Ware State Prison.

# BACKGROUND[1]

Plaintiff, who is currently incarcerated at Ware State Prison in Waycross, Georgia, filed this action contesting certain conditions of his confinement. Id. On July 22, 2015, Plaintiff was transferred from Telfair State Prison to Ware State Prison. (Id. at p. 8.) Upon arrival at Ware State Prison, Plaintiff was placed in the Tier II Segregation Housing Unit ("Tier II Unit") because he was allegedly a threat to the safe and secure operation of the facility. (Id. at p. 9.) Plaintiff contends that Defendants have violated numerous Department of Corrections' policies regarding his placement in the Tier II Unit. For instance, Plaintiff contends that he has not been provided any hearing regarding his placement and was not able to appeal his segregation assignment. Id.

Plaintiff contends that the conditions of confinement of the Tier II Unit are significantly more difficult than those in the general population of the prison. (Id. at pp. 10–11.) According to Plaintiff, he is held in a solitary confinement cell that is in essence an "isolation cell" with no furniture, no window, and no stainless steel mirror, and where Plaintiff is forced to sleep on the floor. Id. Plaintiff contends that, despite a policy that he be allowed five hours of exercise, he has received no exercise in the Tier II Unit and is rarely allowed to leave his cell, while prisoners in the general population receive approximately 110 hours per week out of their cell, including recreation and social interaction including two to six hours of outside recreation every day. Id. Plaintiff stated in his original Complaint that he is permitted one two-hour contact visit per month, while general population prisoners receive eight six-hour contact visits per month. Id. He also stated that he is allowed one fifteen minute phone call per month, while general population inmates have free use of the phones when out of their cells. Id. In addition, Plaintiff

---

[1] The following facts are taken from Plaintiff's Complaint and Amended Complaint and are construed as true, as they must be at this stage.

has been deprived of all of his personal property, and he is not allowed to purchase or possess items that prisoners in the general population are allowed to possess. (Id. at p. 11.) Other differences between Plaintiff's conditions of confinement and other prisoners' conditions include mail being withheld, and denial of access to law libraries, group religious services, televisions, as well as educational and vocational opportunities. (Id. at pp. 11–12.) Plaintiff described his confinement as a "sensory deprivation tank." (Id. at p. 12.) Plaintiff alleged that he has no determinate release date from the Tier II Unit.

In his original Complaint, Plaintiff alleged that Defendant Gramiak, the Warden of Ware State Prison, arbitrarily assigned Plaintiff to the Tier II Unit. (Id. at pp. 13–14.) He further alleged that Defendants Brooks, Steedley, and Lowe, members of the Tier II Classification Committee, have refused to conduct an administrative hearing with respect to that placement. Id.

On December 9, 2015, Plaintiff filed a Motion for Leave to File a Supplemental Complaint. (Doc. 20). Plaintiff attached to that Motion his proposed Amended Complaint through which he seeks to add several Defendants and claims. Plaintiff levied claims that he was being denied opportunities to exercise, that he has been denied medical care, and that he has received inadequate food at Ware State Prison. (Id. at pp. 5–10.) He also amended his allegations from his original Complaint to allege that he was not permitted to receive any visitors, was not allowed to make any phone calls, and did not have any heat or hot water. (Id. at pp. 11–12.) Plaintiff also supplemented his due process claims. He alleges that Defendant Steedley notified him on October 13, 2015, that a 90-day review of Plaintiff's assignment to Tier II was conducted and that Plaintiff was being held in the same conditions due to "behavioral issues." (Id. at p. 10.) Plaintiff contends that Defendants violated the Department of Corrections' policies by failing to provide a face-to-face meeting with the classification

committee at the end of the ninety-day period. Plaintiff filed an appeal of his assignment, which Defendant Gramiak denied. (<u>Id.</u> at p. 11.)

## STANDARD OF REVIEW

Plaintiff seeks to bring this action *in forma pauperis* under 42 U.S.C. § 1983. Under 28 U.S.C. § 1915(a)(1), the Court may authorize the filing of a civil lawsuit without the prepayment of fees if the plaintiff submits an affidavit that includes a statement of all of his assets and shows an inability to pay the filing fee and also includes a statement of the nature of the action which shows that he is entitled to redress. Even if the plaintiff proves indigence, the Court must dismiss the action if it is frivolous or malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii). Additionally, pursuant to 28 U.S.C. § 1915A, the Court must review a complaint in which a prisoner seeks redress from a governmental entity. Upon such screening, the Court must dismiss a complaint, or any portion thereof, that is frivolous or malicious, or fails to state a claim upon which relief may be granted or which seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

When reviewing a Complaint on an application to proceed *in forma pauperis*, the Court is guided by the instructions for pleading contained in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain [among other things] . . . a short and plain statement of the claim showing that the pleader is entitled to relief."); Fed. R. Civ. P. 10 (requiring that claims be set forth in numbered paragraphs, each limited to a single set of circumstances). Further, a claim is frivolous under Section 1915(e)(2)(B)(i) "if it is 'without arguable merit either in law or fact.'" <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002) (quoting <u>Bilal v. Driver</u>, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Whether a complaint fails to state a claim under Section 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). Thompson v. Rundle, 393 F. App'x 675, 678 (11th Cir. 2010). Under that standard, this Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not" suffice. Twombly, 550 U.S. at 555. Section 1915 also "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Bilal, 251 F.3d at 1349 (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

In its analysis, the Court will abide by the long-standing principle that the pleadings of unrepresented parties are held to a less stringent standard than those drafted by attorneys and, therefore, must be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972); Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys.") (emphasis omitted) (quoting Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003)). However, Plaintiff's unrepresented status will not excuse mistakes regarding procedural rules. McNeil v. United States, 508 U.S. 106, 113 (1993) ("We have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). The requisite review of Plaintiff's Complaint raises several doctrines of law, which the Court discusses in turn.

# DISCUSSION

The Court notes at the outset that this Court must give deference to prison officials on matters of prison administration and should not meddle in issues such as the contents of a prisoner's file. Courts traditionally are reluctant to interfere with prison administration and discipline, unless there is a clear abuse of discretion. See Procunier v. Martinez, 416 U.S. 396, 404–05 (1974) ("Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration [because] . . . courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform."), *overruled on other grounds by* Thornburgh v. Abbott, 490 U.S. 401 (1989). In such cases, "[d]eference to prison authorities is especially appropriate." Newman v. State of Ala., 683 F.2d 1312, 1320–21 (11th Cir. 1982) (reversing district court's injunction requiring release of prisoners on probation because it "involved the court in the operation of the State's system of criminal justice to a greater extent than necessary" and less intrusive equitable remedy was available); see also Thornburgh, 490 U.S. at 407–08 ("Acknowledging the expertise of these officials and that the judiciary is 'ill equipped' to deal with the difficult and delicate problems of prison management, this Court has afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."); Bell v. Wolfish, 441 U.S. 520, 547 (1979) (acknowledging that courts have "accorded wide-ranging deference [to prison administrators] in adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); Jones v. N. Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977) ("Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."); Bradley v. Hart, No. CV513-127, 2015

WL 1032926, at *10 (S.D. Ga. Mar. 9, 2015) ("It does not appear to be appropriate for this Court to order that prison officials remove entries from Plaintiff's file, which may or may not be accurate.").

Further, in order to state a claim for relief under Section 1983, a plaintiff must satisfy two elements. First, a plaintiff must allege that an act or omission deprived him "of some right, privilege, or immunity secured by the Constitution or laws of the United States." <u>Hale v. Tallapoosa Cty.</u>, 50 F.3d 1579, 1582 (11th Cir. 1995). Second, a plaintiff must allege that the act or omission was committed by "a person acting under color of state law." <u>Id.</u>

## I.      Motion to Amend Complaint

With Defendants having not yet been served with Plaintiff's original Complaint and Plaintiff's Amended Complaint arising out of the same series of transactions and events, the Court **GRANTS** Plaintiff's Motion to Amend his Complaint. Fed. R. Civ. P. 15. Plaintiff need not file an amendment, as his Amended Complaint, (doc. 20, pp. 2–21), has been deemed filed with the Court. The Court will review both the original Complaint and the Amended Complaint during this frivolity review. Additionally, the Clerk of Court is hereby **DIRECTED** to add the following Defendants, named in Plaintiff's Amended Complaint, to the docket of this case: Edwina Johnson, Ware State Prison Deputy Warden of Care and Treatment; Juanda Crawford, Ware State Prison Deputy Warden of Administration; Jane Doe, Ware State Prison Food Services Director; Mr. Ferrel, Medical Director at Ware State Prison; and Jane Doe-2, Physician's Assistant at Ware State Prison.

## II.     Claims for Monetary Damages Against Defendants in Their Official Capacities

Plaintiff cannot sustain a Section 1983 claim for monetary damages against Defendants in their official capacities. States are immune from private suits pursuant to the Eleventh

Amendment and traditional principles of state sovereignty.  <u>Alden v. Maine</u>, 527 U.S. 706, 712–13 (1999).  Section 1983 does not abrogate the well-established immunities of a state from suit without its consent.  <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 67 (1989).  Because a lawsuit against a state officer in his official capacity is "no different from a suit against the [s]tate itself," such a defendant is immune from suit under Section 1983.  <u>Id.</u> at 71.  Here, the State of Georgia would be the real party in interest in a suit against Defendants in their official capacities as employees of the Georgia Department of Corrections.  Accordingly, the Eleventh Amendment immunizes these actors from suit in their official capacities.  <u>See</u> <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989).  Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims against Defendants in their official capacities for monetary relief.  The Court should **DISMISS** these claims.

## III.     Claims Against Defendant Homer Bryson

Section 1983 liability must be based on something more than a defendant's supervisory position or a theory of respondeat superior.[2]  <u>Bryant v. Jones</u>, 575 F.3d 1281, 1299 (11th Cir. 2009); <u>Braddy v. Fla. Dep't of Labor & Emp't Sec.</u>, 133 F.3d 797, 801 (11th Cir. 1998).  A supervisor may be liable only through personal participation in the alleged constitutional violation or when there is a causal connection between the supervisor's conduct and the alleged violations.  <u>Id.</u> at 802.  "To state a claim against a supervisory defendant, the plaintiff must allege (1) the supervisor's personal involvement in the violation of his constitutional rights, (2) the existence of a custom or policy that resulted in deliberate indifference to the plaintiff's constitutional rights, (3) facts supporting an inference that the supervisor directed the unlawful action or knowingly failed to prevent it, or (4) a history of widespread abuse that put the

---

[2]  The principle that respondeat superior is not a cognizable theory of liability under Section 1983 holds true regardless of whether the entity sued is a state, municipality, or private corporation.  <u>Harvey v. Harvey</u>, 949 F.2d 1127, 1129–30 (11th Cir.1992).

supervisor on notice of an alleged deprivation that he then failed to correct." <u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011).

It appears Plaintiff has named Defendant Bryson liable based solely on his position as the Commissioner of the Georgia Department of Corrections. Plaintiff does not allege that Bryson personally participated in the alleged constitutional violations. However, Plaintiff contends that, in the event he was transferred to another facility, Defendant Bryson would retain the ability to remedy any constitutional violation. (Doc. 1, p. 13) (citing <u>Luckey v. Harris</u>, 860 F.2d 1012, 1015–16 (11th Cir. 1988)).

In <u>Luckey</u>, the Eleventh Circuit articulated the scope of the <u>Ex Parte Young</u> exception to the Eleventh Amendment. <u>Luckey</u>, 860 F.2d at 1015–16 (citing <u>Ex Parte Young</u>, 209 U.S. 123, 157 (1908)). Specifically, the Court provided:

> Personal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity. All that is required is that the official be responsible for the challenged action. As the <u>Young</u> court held, it is sufficient that the state officer sued must, 'by virtue of his office, ha[ve] some connection' with the unconstitutional act or conduct complained of. [W]hether [this connection] arises out of general law, or is specially created by the act itself, is not material so long as it exists.

<u>Id.</u> At this early stage, the Court finds that Plaintiff has stated a plausible claim for injunctive relief against Defendant Bryson based on this theory. However, Plaintiff has not alleged that Defendant Bryson personally participated in the alleged constitutional violations or that he should otherwise be held liable for those violations. Indeed, Plaintiff does not explicitly seek compensatory damages from Defendant Bryson. Accordingly, the Court should **DISMISS** any putative claims for monetary damages against Defendant Bryson.

## IV. Eighth Amendment Claims

The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). Generally speaking, however, "prison conditions rise to the level of an Eighth Amendment violation only when they involve the wanton and unnecessary infliction of pain." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quotations omitted). Thus, not all deficiencies and inadequacies in prison conditions amount to a violation of a prisoner's constitutional rights. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). The Constitution does not mandate comfortable prisons. Id. Prison conditions violate the Eighth Amendment only when the prisoner is deprived of "the minimal civilized measure of life's necessities." Id. at 347. However, "[c]ontemporary standards of decency must be brought to bear in determining whether a punishment is cruel and unusual." Bass v. Perrin, 170 F.3d 1312, 1316 (11th Cir. 1999).

The conditions imposed in "administrative segregation and solitary confinement do not, in and of themselves, constitute cruel and unusual punishment." Sheley v. Dugger, 833 F.2d 1420, 1428–29 (11th Cir. 1987); see also Gholston v. Humphrey, No. 5:12-CV-97-MTT-MSH, 2014 WL 4976248, at *3 (M.D. Ga. Oct. 3, 2014) (dismissing prisoner's claims that his transfer to SMU with more restrictive conditions without a "legitimate penological justification" amounts to an Eighth Amendment violation); Anthony v. Brown, No. CV 113-058, 2013 WL 3778360, at *2 (S.D. Ga. July 17, 2013) (dismissing on frivolity review Eighth Amendment claims based on conditions of confinement in crisis stabilization unit).

Here, Plaintiff does not assert claims merely based on being placed in administrative segregation. Rather, Plaintiff asserts three claims that Defendants violated his Eighth

Amendment rights: (1) the denial of exercise, (doc. 2, pp. 4–6); (2) the provision of inadequate food, (id. at pp. 7–10); and (3) the denial of medical care, (id. at pp. 6–7). The Court will assess all of these claims in turn.[3]

### A. Eighth Amendment Claims Based on Denial of Exercise

Plaintiff alleges that, except for one occasion on January 23, 2015, he has never been afforded an opportunity for out of cell exercise while in the Tier II Unit. (Id. at p. 4.) Plaintiff states that he is not allowed to leave his cell except three times a week for a shower and infrequent trips to the medical unit. (Id. at p. 5.) He alleges that he has filed grievances regarding this denial of exercise and that denying him exercise violates the Department of Corrections' standard operating procedures. (Id. at pp. 4–6.)

In limited circumstances, undue restrictions on inmates' opportunities for physical exercise have been deemed to violate the Eighth Amendment when the restrictions posed an unreasonable threat to the inmates' physical and mental health. See Clay v. Miller, 626 F.2d 345, 347 (4th Cir. 1980); Rhem v. Malcolm, 507 F.2d 333, 337 (2d Cir. 1974). Additionally, at this stage, the Court is not aware if Plaintiff has any avenue for exercise inside his cell or otherwise. Cf. Bass v. Perrin, 170 F.3d 1312, 1317 (11th Cir. 1999) (finding complete denial of outdoor exercise did not violate Eighth Amendment where plaintiffs could exercise in confinement cells and booklets detailing proper methods of exercise while in confinement were

---

[3] The Court notes "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). However, absent such interaction, the Court need not consider each condition as part of the overall conditions challenged on an Eighth Amendment claim." Id. at 305 ("To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes.).

made available).  Consequently, Plaintiff's Eighth Amendment denial of exercise claims will survive this early review.

Plaintiff alleges that the following Defendants are aware of his being denied exercise: Defendants Gramiak, Johnson, Brooks, and Steedley.  His denial of exercise claims will proceed against these four Defendants, as well as against Defendant Bryson for injunctive relief only.

However, Plaintiff alleges no facts that plausibly allege that the following Defendants were personally involved in or otherwise causally connected to the denial of exercise: Defendant Crawford; Defendant Lowe; Defendant Jane Doe, the Food Service Director at Ware State Prison; Defendant Ferrel; and Defendant Jane Doe-2, the Physician's Assistant at Ware State Prison.  In order to be held liable under the Eighth Amendment, a prison official must know that the inmate faces a substantial risk of serious harm and then disregard that risk.  Farmer v. Brennan, 511 U.S. at 828.  As Plaintiff does not allege that Crawford, Lowe, Doe, Ferrel, and Doe-2 were even aware of the denial of his exercise, the Court should **DISMISS** his Eighth Amendment denial of exercise claims against these five Defendants.

### B.     Eighth Amendment Claims Based on Inadequate Food

Plaintiff contends that he has been served "inadequate portions of processed foods loaded with synthetic chemicals which lack the proper nutrients (i.e., vitamins, minerals, essential fatty acids, enzymes, glyconutrients, amino acids, etc..) that cells require to function at optimal capacity[.]"  (Doc. 20, pp. 7–8.)  He further alleges that the meals are smaller than meals served to the general population and that he only gets two meals on Fridays, Saturdays, and Sundays.  (Id.at pp. 7–9.)  He alleges that the meals are causing him "severe weight loss, a lack of energy, initiative, drive, etc."  (Id. at p. 8.)

The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the "minimal civilized measure of life's necessities." Wilson, 501 U.S. at 303. It is well-established that inmates must be provided nutritionally adequate food, "prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Shrader v. White, 761 F.2d 975, 986 (4th Cir. 1985) (quoting Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir. 1980)). An inmate's food need not be "tasty or aesthetically pleasing" but merely "adequate to maintain health." Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998); see also Hamm v. DeKalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985) ("The Constitution requires that prisoners be provided reasonably adequate food.")

Plaintiff plausibly alleges that he has been denied food adequate to maintain his health while in the Tier II Unit. Moreover, Plaintiff has arguably alleged sufficient facts that the following Defendants were aware of his inadequate food and in a position to correct these alleged deficiencies: Defendant Doe, the Food Service Director at Ware State Prison; Defendant Crawford, Defendant Gramiak, and Defendant Johnson. (Doc. 1, p. 10.) Accordingly, Plaintiff's Eighth Amendment inadequate food claims should proceed against these four Defendants, as well as against Defendant Bryson for injunctive relief only. See Walker v. Powell, No. 5:05-CV-075-SPM, 2007 WL 174337, at *6 (N.D. Fla. Jan. 19, 2007) (denying summary judgment on inadequate food claim to defendant that was aware of and in position to correct problems).

However, Plaintiff alleges no facts that plausibly allege that the following Defendants were personally involved in or otherwise causally connected to the provision of inadequate food: Defendants Brooks, Steedley, Lowe, Ferrel, and Jane Doe-2, the Physician's Assistant at Ware State Prison. Again, in order to be held liable under the Eight Amendment, a prison official must

know that the inmate faces a substantial risk of serious harm and then disregard that risk. <u>Farmer</u>, 511 U.S. at 828. As Plaintiff does not allege that Defendants Brooks, Steedley, Lowe, Ferrel, and Jane Doe-2 were even aware of the denial of his adequate food, the Court should **DISMISS** his Eighth Amendment denial of adequate food claims against these five Defendants.

### C. Eighth Amendment Claims Based on Denial of Medical Care

In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. <u>Farmer</u>, 511 U.S. at 828. However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting <u>Estelle</u>, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" <u>Id.</u> (quoting <u>Hill</u>, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." <u>Haney v. City of</u>

Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995).  Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence."  Goebert, 510 F.3d at 1327.

"The meaning of 'more than gross negligence' is not self-evident[.]"  Id.  In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay."  Id. "When the claim turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'"  Blanchard v. White Cty. Det. Center Staff, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting Harris, 941 F.2d at 1504).  "Deliberate indifference is not established where an inmate received care but desired different modes of treatment."  Id.

Based on Plaintiff's allegations, beginning in August of 2015, he suffered from "migraines, heartburn, stomach cramps, severe neck and back pain, constipation, lethargy, and depression." (Doc. 1, p. 6.)  Despite repeated sick calls, Plaintiff was not brought to the medical unit until October 27, 2015.  Id.  Defendant Jane Doe 2, a physician's assistant, told Plaintiff to stop exercising and prescribed him 15 ibuprofen pills.  Id.  Plaintiff has continued to submit sick calls asking that he be examined by a qualified medical specialist.  (Id.at pp. 6–7.)  He also filed a grievance asking that his severe neck and back injuries be examined by a qualified physician. Id.  However, Plaintiff's calls for medical attention have gone unanswered, and he suffers from immense pain, difficulty breathing, and limited mobility.  Id.  He contends that his inadequate medical care is a result of being placed in the Tier II Unit.  These allegations state a plausible

claim for the denial of medical care and will proceed against Defendants Gramiak, Johnson, Crawford, Ferrel, and Doe-2, as well as against Bryson for injunctive relief only.

However, Plaintiff alleges no facts that plausibly allege that the following Defendants were personally involved in or otherwise causally connected to the denial of medical care: Defendants Brooks, Steedley, Lowe, and Jane Doe, the Ware State Prison Food Director. Again, in order to be held liable under the Eight Amendment, a prison official must know that the inmate faces a substantial risk of serious harm and then disregard that risk. <u>Farmer</u>, 511 U.S. at 828. As Plaintiff does not allege that Defendants Brooks, Steedley, Lowe, and Jane Doe, were even aware of the denial of his medical care, the Court should **DISMISS** his Eighth Amendment inadequate medical care claims against these four Defendants.

## V. Due Process Claims

### A. Procedural Due Process

Plaintiff claims that his placement in the Tier II Unit is disciplinary in nature and that he has not received adequate due process regarding the placement. An inmate states a cognizable claim for the deprivation of his procedural due process rights under the Fourteenth Amendment when he alleges the deprivation of a constitutionally protected liberty or property interest, state action, and constitutionally inadequate process. <u>Shaarbay v. Palm Beach Cty. Jail</u>, 350 F. App'x 359, 361 (11th Cir. 2009) (citing <u>Cryder v. Oxendine</u>, 24 F.3d 175, 177 (11th Cir. 1994)). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556, (1974). Rather, "a disciplinary proceeding, whose outcome will 'impose[ ] atypical and significant hardship on the inmate' must ensure the following due process rights: (1) advance written notice of the claimed violation, (2) a written statement by the fact finders as to the

evidence relied upon and the reasons for the disciplinary action taken, and (3) an opportunity to call witnesses and present documentary evidence in his defense." Asad v. Crosby, 158 F. App'x 166, 173 (11th Cir. 2005) (citing Wolff, 418 U.S. at 563–67).

This Court has held that an inmate's placement in administrative segregation alone is a non-punitive action. Bradley v. Hart, No. CV513-127, 2015 WL 1032926, at *5 (S.D. Ga. Mar. 9, 2015), *appeal dismissed* (July 8, 2015). However, at this early stage, Plaintiff has arguably set forth a non-frivolous claim that his placement in the Tier II program and his continued stay in that program are punitive in nature. For example, Plaintiff alleges that Defendant Steedley notified Plaintiff on October 13, 2015, that he was being held in the Tier II Unit and with restrictive conditions due to Plaintiff's behavioral issues. (Doc. 20, p. 10.) Additionally, Plaintiff plausibly alleges atypical and significant hardship in the Tier II program and that he has not received the limited measures of process set forth in Asad.

Plaintiff has alleged sufficient facts for his procedural due process claims to proceed against Defendants Gramiak, Brooks, Steedley, and Lowe, as well as against Defendant Bryson for injunctive relief only. However, Plaintiff alleges no facts that plausibly allege that the following Defendants were personally involved in or otherwise causally connected to the denial of his procedural due process: Johnson, Crawford, Jane Doe, Ferrel, and Jane Doe-2. Accordingly, the Court should **DISMISS** Plaintiff's procedural due process claims against these five Defendants.

### B. Substantive Due Process

"The Due Process Clause protects against deprivations of 'life, liberty, or property without due process of law.'" Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999) (quoting U.S. CONST. AMEND. XIV). The Supreme Court has identified two situations in which

a prisoner can be deprived of liberty such that the protection of due process is required: (1) there is a change in the prisoner's conditions of confinement so severe that it essentially exceeds the sentence imposed by the court; and (2) the State has consistently given a benefit to prisoners, usually through a statute or administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 1290–91 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

In Sandin, the United States Supreme Court addressed whether the punishment inmate Conner received for a disciplinary violation was sufficient to invoke a liberty interest protected by the Due Process Clause. 515 U.S. at 472. Following a disciplinary conviction, Conner received 30 days' disciplinary segregation in a Special Housing Unit. Id. at 475. After noting that the segregation was a form of punishment, the Court concluded that it was not a dramatic departure from the conditions of Conner's indeterminate sentence. Id. at 485. The Supreme Court held there is no right inherent in the Due Process Clause for an inmate not to be placed in disciplinary segregation nor is there a state-created liberty interest to be free from disciplinary segregation. Id. at 487. The Court determined that the conditions of disciplinary segregation at the prison where Conner was incarcerated were virtually indistinguishable from the conditions of administrative segregation and protective custody. Id. at 486. Also, the Court noted that the conditions of disciplinary segregation were not markedly different from the conditions in general population. Id. The Court concluded that the conditions of disciplinary segregation did not impose an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. Thus, the Court determined that Conner was not entitled to due process protection. Id. at 487. The Court observed that this holding was a return to the due process principles of Wolff and Meachum v. Fano, 427 U.S. 215 (1976), which required an inmate to suffer a

"grievous loss" before a liberty interest could be found. Id. at 478–83. The Sandin Court ruled that in the future, liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, (citations omitted), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 480, 484; see also Rodgers v. Singletary, 142 F.3d 1252, 1253 (11th Cir. 1998) (affirming that two months' confinement to administrative segregation was not a deprivation of a constitutionally protected liberty interest).

An inmate, therefore, has a liberty interest related to his confinement in segregation only if the state has created a liberty interest through the nature of the conditions. Sandin, 515 U.S. at 487. To determine whether the state has created a liberty interest, courts must look to the nature of the conditions of the confinement in relation to the ordinary incidents of prison life, rather than to the language of the regulations regarding those conditions. Id. at 484; Wallace v. Hamrick, 229 F. App'x 827, 830 (11th Cir. 2007). Courts should also consider the duration of the confinement in segregation when determining if the confinement constitutes an atypical and significant hardship. See Al–Amin v. Donald, 165 F. App'x 733, 738 (11th Cir. 2006); see also Williams v. Fountain, 77 F.3d 372, 374 (11th Cir. 1996).

In the present action, Plaintiff has plausibly alleged that his placement in the Tier II Unit at Ware State Prison deprives him of a liberty interest. Plaintiff arguably sets forth facts which could lead to the conclusion that the conditions of the Tier II Unit impose an atypical and significant hardship on him relative to the ordinary incidents of prison life. Unlike the inmate in Sandin, Plaintiff plausibly alleges that the conditions in the Tier II Unit are markedly different from the conditions in general population.

For all of these reasons, Plaintiff has alleged sufficient facts for his substantive due process claims to proceed against Defendants Gramiak, Brooks, Steedley, and Lowe, as well as against Defendant Bryson for injunctive relief. However, Plaintiff alleges no facts that plausibly allege that the following Defendants were personally involved in or otherwise causally connected to the denial of his substantive due process: Johnson, Crawford, Jane Doe, Ferrel, and Jane Doe-2. Accordingly, the Court should **DISMISS** Plaintiff's substantive due process claims against these five Defendants.

## VI.     Motion for a Preliminary Injunction

Plaintiff has sought preliminary injunctive relief from the Court. (Doc. 4.) To be entitled to a preliminary injunction, the movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) an injunction or protective order is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the injunction or protective order would inflict on the non-movant; and (4) the injunction or protective order would not be adverse to the public interest. Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225–26 (11th Cir. 2005). In this Circuit, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." Horton v. City of Augustine, Fla., 272 F.3d 1318, 1326 (11th Cir. 2001).

Plaintiff has failed to make a sufficient showing entitling him to the extraordinary remedy of a preliminary injunction. Specifically, he has failed to show that he has a substantial likelihood of ultimate success on the merits of his claims. Accordingly, the Court should **DENY** his Motion for Preliminary Injunction. This is not to say that Plaintiff will not be able to ultimately obtain injunctive relief in this case. However, he is not entitled to such relief at this time.

## CONCLUSION

For the numerous reasons set forth above, the Court should **DISMISS** the following claims:

- All monetary damages claims against Defendants in their official capacities;

- All monetary damages claims against Defendant Homer Bryson;

- Eighth Amendment denial of exercise claims against Defendants Crawford, Lowe, Doe, Ferrel, and Doe-2;

- Eighth Amendment inadequate food claims against Defendants Brooks, Steedley, Lowe, Ferrel, and Jane Doe-2;

- Eighth Amendment inadequate medical care claims against Defendants Brooks, Steedley, Lowe, and Jane Doe; and

- Procedural and Substantive Due Process Claims against Johnson, Crawford, Jane Doe, Ferrel, and Jane Doe-2.

Additionally, I **RECOMMEND** that the Court **DENY** Plaintiff's Motion for a Preliminary Injunction.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the Plaintiff.

### REMAINING CLAIMS AND DEFENDANTS

Plaintiff's allegations in his Complaint and Amended Complaint arguably state the following colorable claims for relief under 42 U.S.C. § 1983:

- Eighth Amendment denial of exercise claims against Defendants Gramiak, Johnson, Brooks, and Steedley, as well as against Defendant Bryson for injunctive relief only;

- Eighth Amendment inadequate food claims against Defendants Jane Doe, Crawford, Gramiak, and Johnson, as well as against Defendant Bryson for injunctive relief only;

- Eighth Amendment inadequate medical care claims against Defendants Gramiak, Johnson, Crawford, Ferrel, and Jane Doe-2, as well as against Bryson for injunctive relief only; and

- Procedural and Substantive Due Process Claims against Defendants Gramiak, Brooks, Steedley, and Lowe, as well as against Defendant Bryson for injunctive relief only.

Consequently, a copy of Plaintiff's Complaint, Amended Complaint, and a copy of this Order shall be served upon all Defendants by the United States Marshal without prepayment of cost.

The Court also provides the following instructions to the parties that will apply to the remainder of this action and which the Court urges the parties to read and follow.

## <u>INSTRUCTIONS TO DEFENDANTS</u>

Because Plaintiff is proceeding *in forma pauperis,* the undersigned directs that service be effected by the United States Marshal. Fed. R. Civ. P. 4(c)(3). In most cases, the marshal will first mail a copy of the complaint to the Defendant by first-class mail and request that the Defendant waive formal service of summons. Fed. R. Civ. P. 4(d); Local Rule 4.7. Individual and corporate defendants have a duty to avoid unnecessary costs of serving the summons, and any such defendant who fails to comply with the request for waiver must bear the costs of personal service unless good cause can be shown for the failure to return the waiver. Fed. R. Civ. P. 4(d)(2). Generally, a defendant who timely returns the waiver is not required to answer the complaint until sixty (60) days after the date that the marshal sent the request for waiver. Fed. R. Civ. P. 4(d)(3).

**IT IS FURTHER ORDERED** that Defendants are hereby granted leave of court to take the deposition of the Plaintiff upon oral examination. Fed. R. Civ. P. 30(a). Defendants are further advised that the Court's standard 140 day discovery period will commence upon the filing of the last answer. Local Rule 26.1. Defendants shall ensure that all discovery, including the Plaintiff's deposition and any other depositions in the case, is completed <u>within that discovery period</u>.

In the event that Defendants take the deposition of any other person, Defendants are ordered to comply with the requirements of Federal Rule of Civil Procedure 30. As the Plaintiff will likely not be in attendance for such a deposition, Defendants shall notify Plaintiff of the deposition and advise him that he may serve on Defendants, in a sealed envelope, within ten (10)

days of the notice of deposition, written questions the Plaintiff wishes to propound to the witness, if any. Defendants shall present such questions to the witness seriatim during the deposition. Fed. R. Civ. P. 30(c).

### INSTRUCTIONS TO PLAINTIFF

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon their attorneys, a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Fed. R. Civ. P. 5. "Every pleading shall contain a caption setting forth the name of the court, the title of the action, [and] the file number." Fed. R. Civ. P. 10(a).

Plaintiff is charged with the responsibility of immediately informing this Court and defense counsel of any change of address during the pendency of this action. Local Rule 11.1. Plaintiff's failure to notify the Court of a change in his address may result in dismissal of this case.

Plaintiff has the responsibility for pursuing this case. For example, if Plaintiff wishes to obtain facts and information about the case from Defendants, Plaintiff must initiate discovery. See generally, Fed. R. Civ. P. 26, *et seq*. The discovery period in this case will expire 140 days after the filing of the last answer. Local Rule 26.1. Plaintiff does not need the permission of the Court to begin discovery, and Plaintiff should begin discovery promptly and complete it within this time period. Local Rule 26.1. Discovery materials should **not** be filed routinely with the Clerk of Court; exceptions include: when the Court directs filing; when a party needs such

materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. Local Rule 26.4.

Interrogatories are a practical method of discovery for incarcerated persons. <u>See</u> Fed. R. Civ. P. 33. Interrogatories may be served only on a <u>party</u> to the litigation, and, for the purposes of the instant case, this means that interrogatories should not be directed to persons or organizations who are not <u>named</u> as Defendants. Interrogatories are not to contain more than twenty-five (25) questions. Fed. R. Civ. P. 33(a). If Plaintiff wishes to propound more than twenty-five (25) interrogatories to a party, Plaintiff must have permission of the Court. If Plaintiff wishes to file a motion to compel, pursuant to Federal Rule of Civil Procedure 37, he should first contact the attorneys for Defendants and try to work out the problem; if Plaintiff proceeds with the motion to compel, he should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery. Fed. R. Civ. P. 26(c); 37(a)(2)(A); Local Rule 26.7.

Plaintiff has the responsibility for maintaining his own records of the case. If Plaintiff loses papers and needs new copies, he may obtain them from the Clerk of Court at the standard cost of fifty cents ($.50) per page. **If Plaintiff seeks copies, he should request them directly from the Clerk of Court and is advised that the Court will authorize and require the collection of fees from his prison trust fund account to pay the cost of the copies at the aforementioned rate of fifty cents ($.50) per page.**

If Plaintiff does not press his case forward, the court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Local Rule 41.1.

It is Plaintiff's duty to cooperate fully in any discovery which may be initiated by Defendants. Upon no less than five (5) days' notice of the scheduled deposition date, the

Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath or solemn affirmation, any question which seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case.

As the case progresses, Plaintiff may receive a notice addressed to "counsel of record" directing the parties to prepare and submit a Joint Status Report and a Proposed Pretrial Order. A plaintiff proceeding without counsel may prepare and file a unilateral Status Report and is required to prepare and file his own version of the Proposed Pretrial Order. A plaintiff who is incarcerated shall not be required or entitled to attend any status or pretrial conference which may be scheduled by the Court.

### ADDITIONAL INSTRUCTIONS TO PLAINTIFF REGARDING MOTIONS TO DISMISS AND MOTIONS FOR SUMMARY JUDGMENT

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen (14) days of its service. "Failure to respond shall indicate that there is no opposition to a motion." Local Rule 7.5. Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that he does not oppose the Defendants' motion. Plaintiff's case may be dismissed for lack of prosecution if Plaintiff fails to respond to a motion to dismiss.

Plaintiff's response to a motion for summary judgment must be filed within twenty-one (21) days after service of the motion. Local Rules 7.5, 56.1. The failure to respond to such a motion shall indicate that there is no opposition to the motion. Furthermore, each material fact set forth in the Defendants' statement of material facts will be deemed admitted unless specifically controverted by an opposition statement. Should Defendants file a motion for

summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine dispute as to any material fact in this case. That burden cannot be carried by reliance on the conclusory allegations contained within the complaint. Should the Defendants' motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the Defendants' statement of the facts. Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine dispute for trial, any factual assertions made in Defendants' affidavits will be accepted as true and summary judgment may be entered against the Plaintiff pursuant to Federal Rule of Civil Procedure 56.

   **SO ORDERED** and **REPORTED and RECOMMENDED**, this 8th day of January, 2016.

_____

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA